UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24CR80115-DMM

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) **GOVERNMENT'S RESPONSE TO** |
| v. | ) **DEFENDANT'S OBJECTIONS TO** |
| | ) **PRESENTENCE INVESTIGATION** |
| | ) **REPORT** *AND* |
| JAMES WILLIAM LATTA, | ) **GOVERNMENT'S OBJECTIONS TO** |
| | ) **PRESENTENCE INVESTIGATION** |
| Defendant. | ) **REPORT** |
| _____ | ) |

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to the Defendant's objections to presentence investigation report (DE 27) and makes objections to presentence investigation report.

The defendant has filed fourteen (14) objections to the PSR. All but three of them are factual objections that do not affect the guidelines calculations (DE 27: Objections 1-4, 8-14). First, the government will address the defendant's objections as they relate to the guideline calculations. Second, the government makes two objections to the PSR. Finally, the government will address the factual and supervised release objections to the PSR made by the defendant.

**A. Response to Defendant's PSR Objections to the Guidelines Calculations**

1. Response to the Defendant's Objection #5 to 2-level SOC of USSG 2G2.2(b)(6)

Defendant contests the inclusion of the special offense characteristic, pursuant to USSG § 2G2.2(b)(6), which states, "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by **2** levels." (PSR ¶ 77). He asserts that

because a computer is used in nearly every cases, this Court should simply disregard the special offense characteristic. DE 27:6-8.

While the Sentencing Commission has recommended a change in the guidelines in the past, the fact remains that this special offense characteristic still exists. As the Second Circuit observed "the use of a computer is not essential to the act of distributing child pornography. A person can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun." in *United States v. Reingold*, 731 F.3d 204, 226 (2d Cir. 2013); see also *United States v. Kiefer*, 760 F.3d 926, 931 (9th Cir. 2014) (finding no double counting for the inclusion of this special offense characteristic). To properly calculate the guidelines, the Court must include this special offense characteristic as a computer was used to commit this offense.

In *United States v. McRee*, 625 Fed. Appx. 430, 433-434 (11th Cir. 2015), the Eleventh Circuit considered the defendant's objection to the district court's application of USSG § 2G2.2(b)(6) as "with technology today, child pornography offenses will almost always involve the use of a computer." However, in considering the "Commission report" that "undermin[ed] the enhancements under § 2G2.2," the Court held that the report "did 'not change the statutory sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit.'" *Id.* citing *United States v. Cubero,* 754 F.3d 888, 900 (11th Cir.). Thus, there is no statutory, judicial or administrative framework for this Court to ignore the application of the two-level increase pursuant to USSG § 2G2.2(b)(6).

2. Response to the Defendant's Objection #6 to the 5-level SOC of § 2G2.2(b)(5)

Defendant contests the inclusion of the special offense characteristic, pursuant to USSG § 2G2.2(b)(5), which provides for a 5-level increase of the guideline level if, "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The application

notes define this, in relevant part, as "any combination of two or more separate instances of the sexual abuse or sexual exploration or a minor by the defendant whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved he same minor; or (C) resulted in a conviction of such conduct" U.S.S.G. § 2G2.2, Application Note 1. "Sexual abuse or exploitation" is defined, in relevant part, as "(A) conduct described in 18 U.S.C. … §2251(a)-(c), …§2422…; or (C) an attempt or conspiracy to commit any of the offenses under subdivision[] (A)…"

Factually, the SOC applies because in two or more acts. First, the defendant attempted to entice the UC's notional minor child (PSR ¶¶ 19,40). He committed the substantial step of sending child pornography as well as videos and photographs of his own penis to the UC in an effort to groom the child to eventually engage in sex with the child (PSR ¶¶ 16,18). Second, LATTA directed the production of child pornography by Michigan woman of her four-year-old son and the distribution of the same. PSR ¶ 52. The Michigan woman provided that at least 100 occasions over the last two years, LATTA directed her to commit sexual abuse on her toddler son while producing child pornography of those acts, which was then distributed to LATTA. PSR ¶ 53. Snapchat messages between LATTA and the Michigan woman included images and videos sent of herself and son together, some of which included her son as nude. PSR ¶ 54. LATTA replied with a video of himself masturbating, and he made comments that he wanted her son to watch him masturbate and for him to watch the woman stroke him, and stated, "Mmm you know I want to cum on his little cock and watch mommy lick it off…I want his little hand on my cock. Yeah. While your mouth is around my head." *Id.*

In *United States v. Bilus*, 626 F. App'x 856 (11th Cir. 2015), the District Court did not abuse its discretion in finding that defendant, who was convicted of receiving and possessing child

pornography, had engaged in a pattern of sexual abuse or exploitation of a minor and applying applicable five-level enhancement. Although defendant asserted that online "chats" he had engaged in with individuals who were believed to be minors did not constitute a substantial step toward the actual commission of an offense, during some chats defendant and/or the other participant would masturbate, defendant asked the participant to take off her clothes and show him her private parts, and he told some participants he wanted to have sex with them and described specific sex acts he wanted to perform.

Thus, LATTA in fact qualifies for this special offense characteristic.

3. Response to the Defendant's Objection #7 to the total offense level

With the defendant's two legal objections being overruled, the total offense level 39 with sentencing range of 262-327 should remain pending the outcome of the government's objections to the guideline calculations.

**B. Government's PSR Objections to the Guidelines Calculations**

1. Failure of Probation to Appropriately Apply the 6 or 5 level Distribution SOC of USSG 2G2.2(b)(3)

As currently written, the PSR applied the 2-level distribution SOC of USSG 2G2.2(b)(3)(F) as the "defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E)" (PSR ¶ 74). However, USSG 2G2.2(b)(3)(B, C and D) each with a 5 or 6 level increase all apply and therefore the greatest of these, paragraph (D) and its 6-level increase to the guidelines should apply.

USSG 2G2.2(b)(3) offers six different SOC's related to distribution. "Distribution" is defined as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual

exploitation of a minor." USSG 2G2.2, App. Note 1. In this case, three (3) of the distribution enhancements apply as the material was distributed for any valuable consideration, to a minor, or to entice a minor. USSG 2G2.2(b)(3)(B, C and D):

> a. (b)(3)(B) – the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, increase by 5 levels;
>
> b. (b)(3)(C) – if the offense involved distribution to a minor, increase by 5 levels;
>
> c. (b)(3)(D) – if the offense involved distribution to a minor, that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, other than illegal activity covered under subdivision (E)[1], increase by 6 levels.

First, as to the 5-level enhancement under (b)(3)(B), LATTA distributed dozens of times in the chatroom he was in and later created (PSR ¶¶ 12,31,32,39,43-46). The Eleventh Circuit has held that sharing child pornography to remain in a group and gain access to others' child pornography meets the criteria under § 2G2.2(b)(3)(B). *See United States v. Bender*, 290 F.3d 1279, 1286-87 (11th Cir. 2002) ("Joining several of our sister circuits, we hold that when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged in 'distribution for the receipt, or expectation of receipt, of a thing of value' as provided in the 2000 version of [U.S.S.G.] § 2G2.2(b)(2).").

In *United States v. Ramnaraine*, for example, the defendant used a file-sharing program called Gigatribe to trade child pornography. 730 F. App'x 749, 751 (11th Cir. 2018). In a chat recovered from the defendant's computer he told another user, *40 "[e]ither you share or I will ban you." *Id*. The Eleventh Circuit found that the use of the file-sharing program combined with the chat was "sufficient evidence that [the defendant] conditioned his sharing of child pornography on

---

[1] USSG 2G2.2(b)(3)(D) requires an increase of 7 levels if the "offense involved distribution to a minor, that was intended to persuade, induce, entice, or coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct". There is no evidence from the communication that LATTA intended to travel to the notional child or have the notional child travel to LATTA.

a return promise to share." *Id*. "[E]ven without an explicit quid pro quo agreement with another distributor of child pornography, a person may engage in such conduct with the reasonable expectation of an exchange." *United States v. Cote*, 482 F. App'x 373, 376 (11th Cir. 2011).

This factual scenario is very different from cases where a defendant simply uploads child pornography to a peer-to-peer sharing network and there is no "evidence, whether direct or circumstantial, that a defendant reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network." *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012). Here, there was evidence showing "the connection between the defendant's distribution and the receipt or expectation of receipt of a thing of value" - namely, the fact that he shared child pornography so that his chatroom members could continue to have available and access to the child pornography exchanged within it. *See id*. Therefore, this special offense characteristic applies.

Similarly, in *United States v. Roman*, 393 F. App'x 149, 150 (5th Cir. 2010) the "[Defendant's] exchange of images with other purveyors of child pornography supports that he had an interest in facilitating a continuing relationship involving the reciprocal transfer of images, i.e., [the defendant] distributed images with the expectation that he would receive other images of child pornography or maintain a relationship with others who distributed child pornography."

This Court can reasonably infer that LATTA was very experienced in the Kik application and created chatrooms to distribute child pornography so that he could also receive child pornography. That is the point of these chatrooms. Therefore, this Court should reach the same conclusion that the 11th and 5th Circuits have repeatedly reached and affirmed on similar facts: Defendant has demonstrated experience with Kik, understood the sharing features, and therefore sought to share those images to allow his chatrooms to continue functioning while at the same time

downloading other images shared by other users of Kik. Consequently, the five-level upward adjustment should apply.

Second, as to the 5-level enhancement pursuant to (b)(3)(C) and the 6-level enhancement pursuant to (b)(3)(D), both of these apply as well. The PSR makes clear that LATTA intended his communication to reach the UC's notional child, whom LATTA believed to be 8 years old (PSR ¶ 10). Throughout LATTA's months-long conversations with UC, he repeatedly attempted to entice and induce the UC's notional child either for unlawful sexual activity with him or the UC. For example, on March 6, "LATTA offered to send the UC photographs or videos of his penis to show to her notional daughter" (PSR ¶ 16). On April 1, LATTA "sent a photograph of a white male sitting with his pants pulled down and an erect penis exposed, and told the UC, 'If you wanna show this to your daughter I sure won't mind'" (PSR ¶ 18). LATTA instructed the UC to describe the picture to the notional child as, "How men get excited and how excited I got thinking about her looking at it." *Id.* On April 3, LATTA wrote to the UC: "I would love for the 2 of you to watch me cum" (PSR ¶ 19). "On multiple occasions, Latta sent videos and photographs to the UC of himself masturbating and instructed the UC to show them to the UC's notional prepubescent child" (PSR ¶ 40). Therefore, LATTA clearly intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity as defined in the guidelines whether it be illegal sex with LATTA or the UC.

Then, on the morning of LATTA's arrest on August 31, 2024, Latta sent the UC a video and stated, this is "How I imagine you and daughter." PSR ¶ 50. In the three-plus minute video a child who appeared to be under 8 years old was on her back with her legs spread displaying her vulva and anus. *Id.* An adult female then zoomed the camera in on the child's genitals and performed oral sex on the child's vulva and anus. *Id.* Latta then sent another video of an adult female sexually

abusing a toddler. *Id.* LATTA's intent therefore was at the very least to distribute the child pornography to the minor, but more specifically to induce and entice the minor to engage in illegal activity, using the videos as a grooming tool to legitimize sexual activity for the young child.

As the greatest level of distribution applies, the PSR 2-level increase for distribution (PSR ¶ 74) should be amended to reflect a 6-level increase pursuant to USSG 2G2.2(b)(3)(E), or at least a 5-level increase pursuant to USSG 2G2.2(b)(3)(C) or (D).

2. <u>Failure of Probation to Apply to the 4-level Enhancement of USSG 3B1.1(a)</u>

The PSR failed to include the guideline enhancement for aggravating role, pursuant to USSG § 3B1.1(a) for organizer or leader of a criminal activity that involved 5 or more participants. Beginning on June 24, 2024, LATTA created and moderated a private Kik chatroom whose purpose was to discuss the sexual abuse of children and share child pornography, usually of prepubescent children, including babies, which he continued to do for two months until his arrest (PSR ¶ 31). He decided who would be allowed into the room and could remove members at will. Upon entering the room, new members were greeted with a message from LATTA, "Any goes. If you're not into it, scroll by or head out." *Id.* The chatroom had numerous members (typically 20-50), and was an "'anything goes' chatroom in which members were invited to share any content they desired, without any limits." *Id.* LATTA's role as the organizer or leader was obvious:

> LATTA not only continuously distributed CSAM within the chatroom but he was one of the biggest distributors within the chatroom. LATTA continued to invite other users into the chatroom who were also sexually interested in children. LATTA and other members of the chatroom continuously distributed CSAM, commented on CSAM that was shared, and requested certain types of CSAM to be shared. Users within the group also sent live Kik videos and photographs of either children or bestiality.

PSR ¶ 32. In fact, as the chatrooms leader and organizer, LATTA posted a link to a website that contained more the 3,000 images and videos of child pornography including of infants and toddlers (PSR ¶ 39). More than 20 members in the chatroom received this link including the UC. *Id.*

This level of responsibility is more than sufficient to establish that LATTA was an organizer or leader of the Kik chatroom for the purposes of Section 3B1.1(a). In making this determination, the Sentencing Guidelines counsel courts to consider a nonexclusive list of factors, including "the exercise of decision-making authority," "the nature of participation in the commission of the offense," "the recruitment of accomplices," "the degree of participation in planning or organizing the offense," "the nature and scope of the illegal activity," and "the degree of control and authority exercised over others." USSG § 3B1.1, cmt. 4; *see also United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) ("There is no requirement that all the considerations have to be present in any one case.").

These factors strongly support a finding that LATTA was a leader and organizer of the criminal conspiracy underlying the Kik chatroom he created. Among other things, he exercised decision-making authority on admission to the chatroom.

LATTA also exercised a degree of control and authority over others by broadly providing directions to the chatroom members about the child pornography to share. Directing the activities of others is a key consideration in determining whether an individual is a leader or organizer. *See, e.g., United States v. Mesa*, 247 F.3d 1165, 1169-70 (11th Cir. 2001) ("evidence in this case was presented that defendant directed the activities of several people… The cumulative effect of directing these activities in furtherance of the offense is sufficient for a sentencing court to find that the Defendant acted as an organizer/leader for the purposes of U.S.S.G. § 3B1.1(a)").

Giving others specific instructions on how to commit a crime cuts in favor of a finding that an individual is an organizer or leader.  *See, e.g.,*; *see also United States v. Caraballo*, 595 F.3d 1214, 1232 (11th Cir. 2010) (affirming imposition of 3B1.1(a) enhancement because, among other things, "Caraballo gave Lopez and Miranda specific instructions on how to commit the crime"); *United States v. Suarez*, 313 F.3d 1287, 1294 (11th Cir. 2002) ("affirming imposition of 3B1.1(a) enhancement because, among other things, the defendant "gave the undercover agents detailed instructions for transporting the drugs"). This can be true regardless of whether, for example other, higher-ranking individuals were involved in the conspiracy.  *See United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006) (affirming imposition of 3B1.1(a) enhancement because, among other things, the defendant "exercised authority over the organization by recruiting and instructing co-conspirators," despite the fact that "others may have had a larger role in the conspiracy…"); U.S.S.G. § 3B1.1, cmt. 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").

Therefore, the Court should include the 4-level Enhancement of USSG 3B1.1(a) as the defendant was the organizer or leader of a criminal activity that involved 5 or more participants.

3. Government's Objection to the total offense level

In sustaining of the government's two legal objections to the PSR, the total offense level 39 with sentencing range of 262-327 should be increased by 10 levels to 49, which resolves to 43 (USSG 5A, App. N.2), and a sentencing range of Life.

**C. Response to Defendant's PSR Factual Objections and Supervised Release Conditions**

1. Defendant's Objection #1 – the government takes no position and defers to Probation.
2. Defendant's Objection #2 – the government takes no position and defers to Probation.

3. <u>Defendant's Objection #3</u> – the evidence is relevant as it relates to the exploitation of the defendant's daughter and the character assessment of the defendant's wife who has provided a letter to the Court. The government requests the Court to overrule the objection.

4. <u>Defendant's Objection #4</u> – the evidence is relevant as it relates to the exploitation of the defendant's daughter. Regarding the interview of Defendant's daughter, even though she denied to the forensic interviewer that LATTA ever inappropriately touched her, she offered that "if something happened to her, she would not be feel comfortable talking to [the forensic interviewer] about it, because she doesn't know her very well." The government requests the Court to overrule the objection.

5. <u>Defendant's Objection #8</u> – the government takes no position and defers to Probation.

6. <u>Defendant's Objection #9</u> – the government takes no position and defers to Probation.

7. <u>Defendant's Objection #10</u> – the government agrees that the length of the video in this particular case is not a reason to depart from the guidelines, however, this is not a position on the content or use of the child pornography video.

8. <u>Defendant's Objection #11</u> – the government agrees with Probation's position and description of the Defendant's admission in online communication to having sexual contact with at least two minors.

9. <u>Defendant's Objection #12</u> – the government takes no position and defers to Probation.

10. <u>Defendant's Objection #13</u> – the government agrees with the search conditions outlined in the PSR ¶¶ 181, 182 and 190. They are reasonable. The law provides that the sentencing court may impose conditions on supervised release to the extent that such conditions are "reasonably related" to the nature of the offense and the goals of deterrence and protecting the public from future offenses by the defendant. 18 U.S.C. § 3583(d)(1); *see also* USSG

§ 5D1.3(b). The conditions imposed by the court must also involve "no greater deprivation of liberty than is necessary" to effectuate the court's goals. 18 U.S.C. § 3583(d)(2). The special condition need not be related to each factor listed in USSG § 5D1.3(b); each factor is an independent consideration to be weighed. *United States v. Bull,* 214 F.3d 1275 (11th Cir.), *cert. denied,* 531 U.S. 1056 (2000). That LATTA submit to searches and inspections is clearly reasonable in light of the numerous crimes he has committed and the fact that he is able to do so on a device without probation having any suspicion that he might be committing those crimes before searching his person or property.

11. Defendant's Objection #14 – the government takes no position and defers to Probation.

**D. Conclusion**

For the above reasons, the Government requests this Honorable Court to overrule the defendant's calculation objections to the PSR, sustain the government's objections to the PSR, and resolve the factual and supervised release objections as noted above.

    Respectfully submitted,
    MICHAEL S. DAVIS
    ACTING UNITED STATES ATTORNEY

By:  s/ *GREGORY SCHILLER*
    Gregory Schiller
    Assistant United States Attorney
    Fla. Bar. 0648477
    500 S. Australian Ave., Suite 400
    West Palm Beach, FL 33401
    Email: gregory.schiller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                       s/*Gregory Schiller*
                                          Gregory Schiller
                                Assistant United States Attorney