UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 24-CR-80115-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAMES WILLIAM LATTA,

    Defendant.
_____/

**DEFENDANT, JAMES WILLIAM LATTA'S SEALED MOTION FOR A DOWNWARD VARIANCE AND SENTENCING MEMORANDUM**

**COMES NOW** the Defendant, **JAMES WILLIAM LATTA** by and through undersigned counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, United States v. Booker, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a) and respectfully files his sealed motion for a downward variance and sentencing memorandum and would accordingly state as follows:

**INTRODUCTION:**

James Latta is a 38-year-old married man, with 2 children, a daughter, Lily, 11-years old and a son, Tyler, 17-years old. As the PSI reflects and as confirmed in the twenty-one (21) letters of support filed in this case, James is someone who has always sought to put his family first and do everything in his power to learn from and not repeat his father's actions, failures and behavior, where his father's life was troubled/ruined/controlled by drug and alcohol addiction and a violent temper. This directly led to James' mother being physically abused by his father and addicted to alcohol. Because of this troubled family situation, it was decided that James and his sister would live with and be raised by his maternal grandparents in Texas.

1

Up until this case and his arrest, James led a law-abiding life and with the exception of an isolated incident and prank which led to a misdemeanor prosecution in 2011, he has lived a lawful and productive life in his community.

James' goal was always to provide for his family financially, emotionally and spiritually and that motivated him to not limit himself with a high school diploma but to enroll in college while employed, to seek and obtain a bachelor's degree (B.S.) in construction engineering and mathematics from Texas A & M in 2017.

While seeking to provide for his family, James took jobs in the construction industry where he supervised the construction and development of several large-scale apartment complexes and other major construction projects, located hundreds of miles from the Defendant's home. As a result, the Defendant was out of town for extended periods of time, for some times as long as 9-18 months away from home, his wife and children. While this employment paid well it forced him to miss precious time with his then young children and left him very sad, anxious and depressed.

As will be explored and addressed more in more detail below, James chose to self-medicate for his undiagnosed depression by consuming unfathomable amounts of alcohol on a daily basis, while out-of-town for extended periods of time for several years preceding this arrest.

In addition, while supervising these out-of-town construction projects, James found himself with hours of free time at work, where his job only required 2-3 hours of actual work during a 10–12-hour work day.

Unfortunately, this depression, self-medication, daily consumption of vast quantities of alcohol and boredom from the enormous amount of free time at work, helped lead James down the path to where he stands today.

This is not raised as an excuse or defense of James' actions but a possible explanation so this Court can better understand how a hard-working, law-abiding, family man became embroiled in and said and did the things he did in these Kik chatrooms which led to these charges.

James would acknowledge the videos he shared and comments he made in these chatrooms were accurately and rather painfully described and detailed in the PSI. As James stated in his acceptance of responsibility letter to this Court, how he reached this point is something he thinks about and tries to figure out every day he is in jail.

What he has realized is that this unfortunate journey to these Kik chatrooms progressed over time and was not an immediate descent. From reading erotic stories, to watching adult films to visiting chatrooms discussing many things other than child pornography, James' journey spanned many years to where he stands now.

While not making excuses for the disturbing things he said and did in these Kik chatrooms, it does appear that having other people in the chatrooms "looking up to him", "valuing his opinions" and "respecting his statements and actions", may, in a very strange twist, have also fueled this addiction.

While James did share numerous videos with other members of these chatrooms, he did not personally produce any videos of minor children, that would be classified or defined as child pornography. Even his posting of the "mega link" in a chatroom on July 5, 2024, which formed the basis for the notice/advertisement charge in Count 1, was not something he produced or compiled, but was a link someone had shared and posted in a prior chatroom exchange.

Throughout this entire process and journey, James has consistently maintained that despite what he did and said, he has never engaged in any type of inappropriate touching or sexual contact with a male or female under 18 years of age.

Now, based on outdated, antiquated and extremely punitive sentencing guideline provisions, James finds himself before this Court for sentencing and his potential lengthy removal from society for advertisement/notice and distribution of child pornography.

The circumstances of how James arrived here are significant, somewhat troubling and unfortunately, a reflection of the impact an isolated incident, poor decisions and choices, made under unfortunate circumstances, can have on an otherwise law-abiding individual and place him in totally unfamiliar and frightening surroundings.

As this Court is acutely aware, this case and James' sentence should be determined by what he did, and most importantly, what he did not do.

What he did was admittedly act as an administrator of a KiK chat room; share and re-post videos (CSAM) and a mega link in this chat room and comment on a number of these videos. There is no question that these videos were troubling, disgusting and repugnant and many of his comments were equally troubling and unquestionably inappropriate.

What he did not do, is also significant for this court, in fashioning an appropriate sentence.

James did not produce any CSAM Videos or materials. He did not act on a number of the statements he made in these chat rooms. Most importantly, he is not charged with and never sexually or inappropriately touched a minor child. While, he did make boastful statements as to what he had done or would like to do, fortunately those statements never came to fruition.

In accordance with applicable authority from the 11th Circuit Court of Appeals and the

United States Supreme Court, this motion for downward variance and sentencing memorandum are necessarily and inherently "fact-specific." Their purpose is to educate this Court as to the person behind the name on the charging document and explain and present James' unique personal circumstances that differentiate him from the majority of people appearing before this Court for sentencing.

These circumstances demonstrate the significance of the "advisory" sentencing guidelines and ability of this Court to exercise its discretion in acting "outside the box" in imposing a sentence that truly satisfies the sentencing criteria enunciated in 18 U.S. § 3553(a).

The Defendant, **JAMES WILLIAM LATTA** would submit that each and every one of the downward variance grounds detailed below, both individually and collectively, authorize, warrant and compel a significant downward variance and a sentence of no more than the 180-month minimum prison sentence to be followed by a period of supervised release.

<u>**SENTENCING GUIDELINE CALCULATION**</u>

In the PSI, from a base offense level of 22, Probation calculated and imposed <u>six</u> (6) separate enhancements with a total twenty (20) level increase to raise James' Adjusted Offense Level to 42. With a 3-level acceptance of responsibility reduction, the offense level was reduced to 39, with a resulting sentencing guideline range of 262-327 months. (PSR Paragraph 71-86, 137)

Seven (7) levels are the subject of previously filed Defense PSI objections. Specifically, the Defendant, has objected to the Sentencing Guideline calculations and enhancements detailed in Paragraph 76 that the Defendant should be assessed a 5-level enhancement as the "defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" in accordance with §2G2.2 (b) (5) and in Paragraph 77 that the Defendant should receive a **2-level**

**enhancement** because "the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material (CP)." **[See PSI Objections-DE 27 P. 1-17]**

If these objections are sustained, and with the accompanying removal of these 7 level enhancements, the total offense level would be 32 as opposed to 39. This would result in a guideline range of 121-151 months, and not 262–327-months. The Defendant recognizes and acknowledges the applicability of the 15-year minimum mandatory sentence for Count 1, which would require the adjustment of the minimum sentence from 121 months to 180 months, assuming at this time, that there is no basis for a downward departure.

## CASE AND PROCEDURAL HISTORY

The Defendant, **JAMES WILLIAM LATTA** was arrested on October 31, 2024 by HSI agents in Texas after executing an arrest warrant issued by United States Magistrate Judge William Matthewman on August 30, 2024.

Although the criminal complaint expressed an imminent threat that James would be sexually abusing his minor daughter, Lily at his cabin, and an urgent effort was then made to immediately apprehend the Defendant, Lily was not with the Defendant at the cabin but was home with her mother and brother. Moreover, the Defendant's wife, Lisa Latta had offered and suggested that James take Lily to the cabin with him but he declined and did not take her with him.

The Defendant's initial appearance was held in the Northern District of Texas, Dallas Division on September 4, 2024 and a detention hearing was held in Texas on September 9, 2024, where the Defendant was ordered to be detained pre-trial.

The Defendant then made his initial appearance in this Court on September 18, 2024 and

6

he was charged in a 4-count indictment filed September 24, 2024. The Defendant did not challenge the Texas detention order and he has been detained pre-trial in this District since his arrival.

After reviewing the Government's extensive discovery materials, the Government and defense counsel engaged in extensive communications and plea negotiations which resulted in the execution and entry of a written plea agreement and factual proffer on November 1, 2024.

On November 13, 2024, this Court accepted the Defendant's guilty plea to 2 counts of this 4-count indictment, and scheduled sentencing for Tuesday, February 4, 2025 at 10:30 a.m.

So that this Court is aware, from his initial meetings with undersigned counsel, James advised that he did <u>not</u> want to proceed to trial, and wanted to resolve this case by admitting guilt and accepting responsibility.

Additionally, as will be discussed in more detail below, while plea negotiations were ongoing and once this plea agreement was finalized, the Defendant, through counsel, expressed his willingness to cooperate and assist the Government in the prosecution of those involved in the production and distribution of child pornography.

The Defendant, **JAMES WILLIAM LATTA** and undersigned counsel would submit that this sentencing guideline range is impermissibly excessive, is based on outdated and antiquated provisions, does not take into consideration the nature and circumstances of these offenses, the Defendant's background and involvement therein and the remaining sentencing factors as set forth in 18 U.S.C. § 3553 (a), which warrant a significant downward adjustment and variance.

### **TITLE 18 U.S.C. § 3553 (A)**

As the Court is acutely aware, a district judge must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in §3553(a)(2), including the need to

reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. See 18 U.S.C. § 3553(a).

In imposing a particular sentence, this Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable Guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553 (a) (1)-(7); United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005)

## U.S.S.G. § 2G.2.2 SENTENCING GUIDELINES DO NOT PRODUCE JUST RESULTS

The guidelines for non-production child pornography cases are disproportionate and out of date. Currently, its application does not serve the promulgated purposes of sentencing. This is because, in addition to being inflated, they do not properly account, based upon research, for variations in offenders' culpability and sexual dangerousness. 28 U.S.C. § 991(b)(1)(c)

The United States Sentencing Commission has recognized the guidelines are "flawed and in need of repair." In its 2012 and 2021 reports to Congress, the USSC, recognized the core problem –typical non-production offense conduct triggers multiple guideline enhancements and exposes most defendants to substantial penalty ranges. As a result, rarely, if ever, will a defendant score at the low end of the statutory range.

These guideline provisions and significant enhancements lead to absurd results that do not serve justice. For example, an offender's guidelines for distribution of child pornography are often immediately quadrupled and accordingly, result in recommend punishments that exceed the

guidelines for federal offenses that involve actual or attempted sexual contact with a minor. USSC 2012 Report, Chap. 6. Indeed, the USSC's 2012 report found that the mean guideline for a §2G2.2 case is higher than the mean guideline for: (1) traveling to engage in sexual contact with a minor 12 years or older; (2) abusive sexual contact with a minor; and (3) statutory rape of a minor. Id.

Even the Department of Justice has acknowledged that "Congress ought to recommend legislation that permits the Sentencing Commission to revise the sentencing guidelines for (non-production) child pornography offenses." See Letter from Jonathan Wroblewski, Director, Office of Policy and Legislation, Criminal Division, U.S.C. Department of Justice, to Hon. William K. Sessions III, Chair, U.S. Sentencing Commission, at 6 (June 28, 2010). Despite the USSC and DOJ's combined requests, to-date Congress has not permitted the USSC to revise the sentencing guidelines.

As a result of congressional inaction, Federal Courts have long recognized the disproportionality of non-production child pornography guidelines. For example, in 2019, the majority (59.0%) of offenders received a variance below the guideline range; the majority of these variances were non-government sponsored. USSC 2021 Report at 5. Only 30% received a sentence within the guideline range.

Within this district, Courts have recognized that the guidelines in non-production cases do not meet the purposes of punishment and routinely vary downward.

In United States v. Carlo Demarco, Case No. 10-cr-20261-KMM, the defendant's guidelines for distribution of child pornography were calculated at 151-188 months. The defendant's proffer reveal that he had more 600 images and 100 videos of prepubescent children engaging in oral and penetrative sex. Unlike James, this defendant was distributing the images

through file sharing software. Still, Judge Moore, over the government's objection, imposed a sentence of 60 months. Case No. 10-cr-20261-KMM (D.E. 46).

In <u>United States v. Diego Matrajt</u>, Case No. 12-cr-20343-RNS, the defendant pled guilty to <u>distribution</u> and possession of child pornography – despite the fact that he videorecorded young children in his home for sexual gratification. His guidelines were 210-262 months. He was in possession of numerous videos of minors; he shared sexually explicit videos of minors with others. This Court granted a variance and imposed a sentence of 120 months.

More recently, in <u>United States v. William Power McCaughan, Jr.</u>, Case No. 23-20325-cr-Ruiz, McCaughan, a licensed and practicing attorney in South Florida, was charged with and pled guilty to <u>production</u> of child pornography, based on his Kik chats with multiple individuals including a 16-year-old boy and a 14-year-old boy discussing sexual acts with pre-pubescent minors. One minor sent McCaughan multiple media files of his naked penis and the minor engaged in sexually explicit conduct with an adult male.

In addition, McCaughan chatted with C.L. an adult male and C.L. sent Defendant a video depicting C.L. 's 11-year-old niece fully nude while exiting the shower. C.L. created and captured the video by putting a hidden recorder inside the bathroom used by his niece.

McCaughan received a sentence of 190 months for this production charge.

Finally, in <u>United States v. Codey Bates</u>, Case No. 23CR80123-RLR, a case handled by the same AUSA and case agent as here, *Bates* was charged with and pled guilty to production of child pornography.

Specifically, *Bates* on video, removed his then 1-year-old, (MV) non-verbal autistic child's diaper, exposing his genitals to the camera as the focus of the video. Bates then replaced the diaper

and exposed his own genitals to the camera and masturbated again. A short time later, Bates relocated to another room where MV can be seen inside a crib. Bates then placed his penis between the bars of the crib and placed MV's hand on Bates' penis multiple times. Bates turned the light on in the room and again puts MV's hand on his penis. Bates then relocated to another area with MV and placed MV's hand on his penis and briefly masturbated.

AUSA Schiller, in a Government sentencing memorandum, stated, "defendant sexually assaulted his own infant child, a child with significant disabilities, a child who was defenseless to the defendant's deviant sexual proclivities."

Based on this production charge, his incredibly vile conduct and direct sexual activity with his own disabled minor child, Bates received a 324-month sentence, far less than the life sentence (50 years) the Government is now seeking in this case, where James' admitted conduct is far less severe and egregious than what transpired in *Bates*.

Unfortunately, and unquestionably, James is another prime example of why non-production child pornography offense guidelines require revision. With no criminal history, and no previous or contemporaneous sexual contact with children, James immediately faces guidelines where, based on the PSI, the top the range of the PSI guideline calculation is 327 months, or just short of the 30-year (360 month) statutory maximum.

This Court is permitted to and should consider these USSC's recommendations on child pornography when granting a downward variance in this case. When viewing James's conduct, compared to conduct by other defendants sentenced in the Southern District of Florida as detailed above, his case merits the imposition of the 15-year minimum sentence.

Even Probation recognized the need to avoid <u>unwarranted sentence disparities</u>, when it

11

advised in Paragraph 156 of the PSI that "pursuant to 18 U.S.C. § 3553(a)(6), the Court shall consider the need to avoid <u>unwarranted sentence disparities</u>, among defendants with similar records who have been found guilty of similar conduct. For consideration, during the last five fiscal years (FY2019-2023), there were 105 defendants whose primary guideline was § 2G2.2, with a Final Offense Level of 39 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 105 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 194 months and the median length of imprisonment imposed was 198 months. Notably, the defendant faces a minimum mandatory term of 180 months as to Count 1, charging Notice/Advertisement of child pornography.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE AND JAMES' INVOLVEMENT/PARTICIPATION

**JAMES WILLIAM LATTA** has never denied and has fully admitted his involvement in these charges as detailed in the complaint, indictment and PSI. While recognizing that the charged offenses occurred during less than a 2-month period from July, 2024 through August 31, 2024,[1] James readily acknowledges the seriousness of these offenses and is still trying to to understand how he ended up in this situation.

Unfortunately, due to his detention and continuous pre-trial incarceration since his arrest on August 31, 2024, James has not been able to obtain and utilize the requisite psychological counseling services to further address and treat this addiction/condition.

---

[1] James does acknowledge that his Kik chatroom activities and interaction with the undercover agent began in March, 2024, and also acknowledges additional Kik and Snap Chat activity in 2023 (April-August, 2023). See PSI paragraphs 55, 61, 62

Through numerous conversations with counsel, James is fully amenable to counseling and treatment to better understand the underlying cause for his actions and is prepared to do whatever is required to ensure that it never happens again.

### JAMES LATTA'S BACKGROUND, HISTORY AND PERSONAL CHARACTERISTICS

James was born in Ohio and as explained in the PSI had a somewhat difficult childhood, due to his father's alcohol, drug addiction and violent temper, as well as his mother's alcohol addiction.

He was raised for years by his maternal grandparents in Texas, from 5th grade through high school. For the past 15 years prior to his arrest, James resided with his wife and children in Commerce, Texas and plans to return there once he completes his anticipated prison sentence.

James comes from and is part of a tremendously caring and supportive family, who have been with him every step of the way since his arrest in August, 2024. This unwavering family support from his mother, brother, sister and family have helped him try to understand and deal with the circumstances that have brought him before this Court for sentencing.

James has been described by everyone who knows him as a helpful, caring, respectful, giving, charitable, compassionate and devoted father, husband and friend, who will volunteer when needed and go out of his way to help anyone who needs assistance.

These views, feelings and sentiments are unanimously echoed in the twenty-one (21) submitted/filed letters of support, where other family members and close personal friends have advised this Court of James' exceptional character, compassion and sacrifices for others and repeatedly provided specific examples to support/substantiate these views.

For example, Justin Shipley, a close friend for 25 years, said this about James,

Although I was surprised to hear about this situation, it does not diminish the deep respect and admiration I have for Jimmy. I know that he has the strength and determination to learn from this experience and emerge as a better person. <u>His actions over the past 25 years have shown me the kind of man he is—someone who puts others before himself, who is loyal to his friends and family, and who genuinely cares about making a positive difference in the lives of those around him.</u>

Another close family friend, Jacqueline Eshelman said this about James,

<u>I have read the court documents that led to James Latta's arrest, so I am aware of what he is being accused of</u>. I am also aware that he provided care for my daughter (as well as other kids) as if she were his own. <u>After talking with my daughter and the others about their feelings and experience while staying at the Latta home, they all told me they all felt safe around James Latta and his family and would stay at their home again</u>.

## JAMES LATTA'S SUBSTANCE/ALCOHOL ABUSE AND ADDICTION

As detailed above, and documented in Paragraph 110 of the PSI, unaware of his depression and the availability of counseling and therapy, while out-of-town for extended periods of time, James self-medicated by consuming unfathomable amounts of alcohol on a daily basis.

Specifically, on an average night, when out of town for these lengthy construction projects, James would consume as many as 30 12oz. cans of beer, alone in his hotel room/apartment. On a number of occasions, James would lose consciousness from this excessive drinking. This continued for at least 2-3 years prior to him stopping several months before his arrest.

While not excusing his behavior in this case, this alcoholism/addiction to alcohol, coupled with his undiagnosed depression and loneliness while out of town for extended periods of time for work and away from his wife and children, is something this Court should consider in seeking to determine how and why James reached this point in his life and thereafter, fashioning an appropriate sentence for his chatroom activity.

As detailed above and in the PSI, prior to his involvement with the current case issues,

James was a normal everyday guy, raising and supporting his family, while seeking to better himself by obtaining a college degree, and balancing in the process, these work and family commitments and responsibilities. For reasons that are slowly starting to come into focus, James made the biggest mistake of his life and immersed himself in these Kik chatrooms, where these charges were born.

James knows what he did was wrong and extremely troubling and disturbing on many levels. He accepts responsibility and knows that he will be punished by this Court.

Clearly, James took a wrong turn several years ago, and went to a very dark place and down a dark hole that he did not even realize its dangers and pitfalls.

On a somewhat positive note, James' arrest has finally brought his issues to the surface, where he can now face and deal with them and accept that he needs substantial treatment to address and hopefully put them to rest and learn from his past mistakes.

At 38-years old James has a number of years ahead of him. Assuming this Court recognizes that his life up to this case, had been lived with fairness, decency, compassion, and respect for others, he will have many years after release from prison to once again, with appropriate treatment and counselling, become a productive member of society.

## COOPERATION/SUBSTANIAL ASSISTANCE

In an effort to attempt to make amends for his actions in this case, James and counsel, months ago, discussed several ways James could do this, keeping in mind, and being somewhat limited by his pre-trial incarceration and him having no access to his phone or computer. Cooperation was discussed and James readily agreed to do whatever he could to assist the Government.

As a result, and as briefly addressed above, James, through counsel, reached out to AUSA Gregory Schiller almost three (3) months ago, and prior to the plea being accepted by this Court, to discuss any cooperation he could provide in regard to others involved in not just distribution of CP or running Kik chatrooms, but those directly involved in the sexual abuse of children and the production of child pornography.

In this regard, James specifically identified several potential targets and people that were directly involved in the sexual abuse of children and HSI agents began their investigation into this information.

This flow of information continued on a regular basis and James, through counsel, provided the Government and HSI agents with direct access of all of his Kik, Snap Chat and Telegram accounts, as well as identifying information for these targets.

In addition, James provided the HSI agents with full access to his seized cellular phone, which contained data and information the agents needed to pursue these targets. Because cellular service had been previously disconnected, James, through his wife and counsel, obtained a new SIM card for the phone, which when delivered to HSI, allowed the agents to fully access the sought-after information on James' phone.

Because of the volume of data and information, the Government and HSI agents, agreed to transport the incarcerated Defendant to the HSI office so James could review all of this data and identify for the agents, those people who were simply innocent contacts and those that were involved in the sexual abuse of children and production of child pornography.

This in-person debriefing lasted for ~four (4) hours and the agents acknowledged their appreciation for James' direct assistance in allowing them to narrow their focus and hopefully

arrest and indict these identified targets.

Because of the volume of information and number of identified targets, and more importantly, the rapidly approaching sentencing date, there does not appear to be enough time for any arrests to be made before sentencing, and as such, it does not appear that a 5K1 motion will be filed by the Government prior to sentencing.

It has been explained and James understands that if these pending investigations, based on his cooperation and assistance bear fruit and arrests and prosecutions occur, he will be eligible for a Rule 35 sentence reduction if the Government determines his information and cooperation has reached the requisite level of substantial assistance.

With that said, James recognizes that this Court cannot grant a downward departure at this time but is advising this Court of his pending cooperation so the Court can see that he is and has been doing all he can do to help atone for his actions and save other children from sexual abuse.

Moreover, James is not seeking to minimize his actions or the seriousness of these charges, but rather is asking this Court to assess his culpability in regard to all of the applicable sentencing factors and the circumstances detailed above, and to impose a sentence in accordance with the provisions and requirement and criteria of 18 U.S.C. § 3553(a).

Based on the foregoing, James would request that this Court grant a downward variance and impose a sentence of no more than 180 months incarceration to be followed by a lengthy period of supervised release.

## CONCLUSION

The Defendant, **JAMES WILLIAM LATTA** would submit that all of these downward variance grounds, both individually and collectively, warrant and compel a significant downward

variance and a sentence of no more than the 180-month minimum sentence to be followed by a lengthy period of supervised release.

This requested downward variance is fully supported by and satisfies all of the provisions articulated in Title 18 U.S.C. § 3553 (a).

This sentence unquestionably reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offenses committed by a college-educated 38-year-old man who has only had one prior contact with the criminal justice system for a misdemeanor charge more than 13 years ago in 2011.

Moreover, this sentence will afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, as the Defendant has been physically, mentally, emotionally and financially crushed by these charges and resulting criminal prosecution. These emotional, financial and personal losses have done more to punish James than any sentence this Court can and will impose.

Being arrested on August 31, 2024 and having now spent more than 5 months in jail has caused James to recognize the consequences of his illegal activity and the disastrous effects it has had on his life and that of his family members. There is absolutely no question that James has learned lessons he could never have imagined and will never engage in any type of criminal activity for the rest of his life.

**WHEREFORE** and by reason of the foregoing, the Defendant, **JAMES WILLIAM LATTA**, respectfully requests that this Honorable Court consider each and every one of the downward variance grounds detailed herein, both individually and collectively, and after hearing additional testimony and argument at sentencing, grant the requested downward variance and impose

a sentence of no more than the 180-month minimum prison sentence to be followed by a period of supervised release, that is and will be sufficient to comply with the provisions of 18 U.S.C. §3553 (a), as detailed and articulated above.

**RESPECTFULLY SUBMITTED,**

**LAW OFFICE OF HOWARD SOHN**
Attorney for the Defendant**, LATTA**
1500 Gateway Blvd, Suite 220
Boynton Beach, Florida 33426
Telephone: (561) 214-2464
Crimdefender1@gmail.com

By: _s//Howard Sohn_____
**HOWARD SOHN**
**Florida Bar No. 0282995**

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished electronically via CM/ECF filing to: **GREGORY SCHILLER, AUSA**, **UNITED STATES ATTORNEY'S OFFICE**, 500 S. Australian Avenue, Suite 400, West Palm Beach, Florida 33401 and **SYRETA GOULD, UNITED STATES PROBATION OFFICE,** Wilkie D. Ferguson, Jr. U.S. Courthouse, 400 North Miami Avenue, 9th Floor South, Miami, Florida 33128 on this 29th day of January, 2025.

By: _s//Howard Sohn_____
**HOWARD SOHN**